UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LESLIE FITZPATRICK,

     Plaintiff,

v.                                                                     Case No. 8:25-cv-00082-NHA

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

## **ORDER**

Plaintiff challenges the December 13, 2024 denial of her claim for Disability Insurance Benefits ("DIB"). She argues that two errors warrant reversal. First, she asserts that the Administrative Law Judge ("ALJ") erred in relying on the testimony of a vocational expert to determine that Plaintiff could perform jobs that exist in substantial numbers in the national economy. Doc. 12, pp. 5-12. Next, she claims that the ALJ failed to fully develop the record and thus determined Plaintiff's mental limitations without sufficient medical evidence. Doc. 12, pp. 12–15.

After carefully reviewing the parties' briefs and the administrative record, I affirm.

## I.    Background

### A.  Procedural History

On January 25, 2022, Plaintiff applied for DIB. R. 236. In her full application, submitted on May 23, 2022, Plaintiff claimed she had become disabled on May 26, 2014, based on heart palpitations, a history of heart surgery, and anxiety. R. 276-279.

The Social Security Administration first denied Plaintiff's application on May 12, 2023 (R. 174), and denied it again after reconsideration on August 23, 2023 (R. 185). On September 27, 2023, Plaintiff requested a hearing with an ALJ. R. 192. A telephonic hearing was held on April 19, 2024. R. 126. At the hearing, Plaintiff was represented by counsel. R. 128. Plaintiff and vocational expert John Black testified. R. 133, 147.

In the post-hearing decision issued on May 31, 2024, the ALJ concluded that Plaintiff was not disabled, because she could perform jobs that existed in significant numbers in the national economy. R.12, 21. Plaintiff requested a review of the ALJ's decision from the Appeals Council, which it denied on December 13, 2024. R. 1.

Plaintiff then timely filed a complaint with this Court seeking reversal of the ALJ's decision. Plaintiff raises two issues. First, she asserts that the ALJ erred in relying on the testimony of a vocational expert that Plaintiff could perform the job of "document preparer," which Plaintiff asserts is obsolete.

Plaintiff continues that the ALJ's conclusion that Plaintiff could perform jobs that existed in substantial numbers in the national economy was therefore errant. Doc. 12, pp. 5-12. Second, Plaintiff asserts that the ALJ should have sought more evidence from a medical expert relating to Plaintiff's mental limitations and thus should be reversed for failing to fully develop the record. Doc. 12, pp. 12-15. The Commissioner has responded. Doc. 14. Plaintiff did not file a reply. The case is now ripe for review.

   B. <u>Evidence Relating to Plaintiff's Ability to Perform Available Jobs</u>

   At Plaintiff's hearing before the ALJ, vocational expert Dr. John Black testified. R. 147. Dr. Black had a Doctorate of Education in rehabilitation services and vocational evaluation, and had participated in over 13,000 similar hearings as a Certified Vocational Expert at the time of Plaintiff's hearing. R. 360.

   At the hearing, after confirming that Dr. Black had familiarized himself with Plaintiff's file and background, the ALJ asked the Dr. Black whether there was any work in the national economy that a hypothetical person with Plaintiff's experience, age, skillset, and mental and physical limitations could perform. R. 147-49. Dr. Black testified that the hypothetical person could perform three jobs identified in the Dictionary of Occupational Titles (DOT): taper, document preparer, and table worker. R. 149. He further testified that

3

there existed in the national economy 3,000 taper positions, 19,000 document preparer positions, and 4,000 table worker positions. *Id.*

The ALJ then asked Dr. Black whether any of those three jobs were currently "performed in a substantially different manner now in the national economy compared to the way they are described in the DOT[.]" R. 150. In response, Dr. Black identified the document preparer position. R. 151. Dr. Black testified that, while the document preparer job was described in the DOT as preparing documents for microfilming, it now consists of preparing documents for scanning. *Id.* Dr. Black testified that, nonetheless, "the actual job itself is not different to any great extent," and that it currently consists of "preparing documents, removing dog ears, taking off the clips, staples and things like that . . . it's basically preparing the paper for whatever you're going to be doing after, whether it be scanning or copying. So, it's essentially the same skill level." *Id.*

Plaintiff's attorney did not object to Dr. Black's qualifications or to any part of his testimony, including his description of the current role of a document preparer as performed in the national economy. Plaintiff's attorney asked Dr. Black only questions about how the hypothetical individual being absent more than twice a month would change his conclusions. R. 152.

C. Evidence Relating to Plaintiff's Anxiety

Plaintiff is a 39-year-old woman with a high school education and one year of work experience as a teacher's assistant. R. 276, 280. She has a history of anxiety.

Plaintiff's medical records show she was treated for generalized anxiety disorder several times between 2019 and 2023, including with lorazepam, BuSpar, and recommendations for lifestyle changes. R. 373, 379, 391.

In a 2022 Function Report, Plaintiff did not check any boxes indicating that her disability affected her mental functioning, and she reported that she followed instructions and got along with authority figures well, but she wrote that she handled stress and changes in routine "not well at all." R. 302-03.

On another version of the same report completed in 2023, Plaintiff again did not check any of the boxes indicating that her disability affected mental functioning, but she reported being able to pay attention for "not very long," that she was "not good with spoken instructions," and that she had a hard time handling stress and routine, noting that changes in her routine "makes my anxiety go crazy." R. 322-23.

In a psychological evaluation performed by psychologist Dr. Jeremy Zohr in 2023, while Plaintiff was applying for disability benefits, Dr. Zohr noted that Plaintiff was alert, coherent, and presented "no evidence of a formal thought

disorder," but that she had an anxious mood and affect. R. 518. Dr. Zohr concluded that Plaintiff had social anxiety disorder and panic disorder. *Id.*

Based on a review of Plaintiff's medical records (including Dr. Zohr's report), psychiatrist Dr. Wendy Silver concluded in May 2023 that Plaintiff had "mild" mental limitations as to memory and understanding, interacting with others, concentration, and adaptability. R. 158. Dr. Silver noted that Plaintiff was not currently in psychiatric treatment and found "no evidence of a mental impairment that significantly limits functioning." *Id.*

In a similar review conducted by psychology Ph.D. Dr. Brian McIntyre in August 2023, Dr. McIntyre found that Plaintiff had "mild" limitations in the same four categories of mental capacity. R. 167. Dr. McIntyre noted that Plaintiff's medical records "illustrate [Plaintiff] does not have significant impact from mental health difficulties at this time," and concluded that she "appears able to complete tasks related to employment without disruption from mental health symptoms." *Id.*

Finally, the record includes Plaintiff's own testimony about her anxiety. At the hearing before the ALJ, Plaintiff explained that she experienced heart palpitations, which caused her "anxiety to go through the roof." R. 135. She testified that her anxiety also worsened when she sat still for long periods of time, received unexpected visits, and was exposed to strangers or large crowds. R. 139-40. Plaintiff testified that her anxiety sometimes prevented her from

6

brushing her hair. R. 137. She explained that she was not currently seeing a psychiatrist or psychologist for her anxiety, and that the only thing that seemed to help her anxiety was marijuana. R. 139-40.

D. <u>The ALJ's Decision</u>

Pursuant to the five-step evaluation process for determining disability status (20 C.F.R. 416.920(a)), the ALJ found that that: (1) Plaintiff had not engaged in substantial gainful activity since her initial DIB application (R. 14); (2) Plaintiff had the severe impairments of congenital heart disease, post-surgical repair  ventricular septal defect and arial septal defect, pulmonary stenosis, hypertensive cardiovascular disease, pulmonary arterial hypertension, cardiac dysrhythmia, and anxiety (*id.*); (3) Plaintiff did not have any impairment or combination thereof which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.*); (4) Plaintiff could perform sedentary work as defined in 20 C.F.R. 416.967(a) with limitations including several physical and environmental limitations as well as the limitation of having only limited or occasional interactions with coworkers or the general public (R. 17); and (5) Plaintiff could perform jobs that existed in significant numbers in the national economy, specifically the jobs of taper, document preparer, and table worker. R. 21-22.

## II.    <u>Standard of Review and Applicable Law</u>

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 597 U.S. 97, 103 (2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ, even if the Court finds the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for her decision with enough clarity to enable the Court to conduct meaningful review of the standards she

8

employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

## II.    <u>Analysis</u>

### A.    <u>The ALJ Properly Identified Jobs That Exist in Significant Numbers in the National Economy That Plaintiff Could Perform.</u>

Plaintiff first asserts that the ALJ erred in Step Five by finding that Plaintiff could perform jobs that existed in significant numbers in the national economy. Plaintiff explains that the ALJ's conclusion hinged on her finding that Plaintiff could perform the job of "document preparer," a finding Plaintiff argues is unsupported by credible evidence. Doc. 12, p. 11.

If an ALJ determines at step four that the claimant cannot perform her past relevant work, the Commissioner has the burden "to show the existence of . . . jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant

9

is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R.§ 416.966(b). An ALJ may meet this burden by posing a hypothetical question to a vocational expert "which comprises all of the claimant's impairments" and then relying on the expert's testimony that Plaintiff is eligible for a significant number of jobs in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999); *Winschel*, 631 F.3d at 1180. In other words, a vocational expert's testimony that a person with a claimant's limitations could perform a significant number of jobs in the national economy constitutes substantial evidence that the claimant is not disabled, so long as the ALJ's hypothetical to the vocational expert describes a person with all of claimant's limitations. *Carman v. Astrue*, 352 F. App'x 406, 408 (11th Cir. 2009) (unpublished).

In addition to considering the vocational expert's testimony at step five, the ALJ may also rely on the Dictionary of Occupational Titles ("DOT"). 20 C.F.R. § 416.966(d)(1), (e). In some instances, the vocational expert's testimony may be inconsistent with the DOT. In 2000, the Social Security Administration (SSA) promulgated SSR 00-4p "to clarify [the] standards [in 20 C.F.R. § 416.966] for identifying and resolving . . . conflicts" between a VE's testimony

and the data in the DOT. SSR 00-4p.[1]  In relevant part, the SSA explained that

"[n]either the DOT nor the VE [(vocational expert)] . . . evidence automatically

'trumps' when there is a conflict;" rather,

> When vocational evidence provided by a VE . . . is not
> consistent with information in the DOT, the
> adjudicator must resolve this conflict before relying on
> the VE . . . to support a determination or decision that
> the individual is or is not disabled. The adjudicator
> will explain in the determination or decision how he or
> she resolved the conflict. The adjudicator must explain
> the resolution of the conflict irrespective of how the
> conflict was identified.[2]

*Id.* When the ALJ fails to identify and resolve apparent conflicts between the

vocational expert's testimony and the DOT, the ALJ's decision is not supported

by substantial evidence. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353,

1362 (11th Cir. 2018).

Moreover, under a revised emergency message issued by the Social

Security Administration in January 2025, an ALJ's decision that work exists

---

[1] This Ruling is binding within the Social Security Administration. 20 C.F.R. § 402.35(b)(1) ("[SSA Rulings] are binding on all components of the Social Security Administration."); *see also Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) ("We require the agency to follow its regulations where failure to enforce such regulations would adversely affect substantive rights of individuals." (citations and internal quotations omitted)).

[2] This Ruling has now been rescinded and replaced by SSR 24-3p. However, SSR 24-3p went into effect on January 6, 2025, and applies only to claims that were pending before the Commission on that date. Plaintiff's claim was decided before that date and, therefore, SSR 00-4p applies to her claim.

for a claimant may not rely on the existence of the job of "document preparer," unless the ALJ receives additional testimony from a vocational expert that the document preparer job, as currently performed, is consistent with the claimant's ability to work and exists in significant numbers. Soc. Sec. Admin. EM-24027                                                                                              REV (https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM).

Once the Commissioner meets his burden to show that a claimant, despite her impairments, can perform jobs that exist in significant numbers in the national economy, "the burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [SSA]." *Hale*, 831 F.2d at 1011; *see also Jones*, 190 F.3d at 1228 ("If the Commissioner can demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.").

In Plaintiff's case, Dr. Black testified that Plaintiff could perform the job of "document preparer," and explained that the job now differs from the way the Dictionary of Occupational Titles (DOT) describes it. R. 149, 151. The DOT describes the position as preparing documents "for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices," refers to cutting documents "to microfilming size," and stamping documents as needed to prepare them for "special handling . . . during microfilming." DOT § 249.587-018. The VE explained that, while the job still requires, "preparing

documents, removing dog ears, taking off the clips, staples and things like that," the preparation is now done to prepare the documents for "scanning or copying," rather than for microfilm. R. 151. Dr. Black testified that a hypothetical person with Plaintiff's abilities and limitations could perform the job as it is now performed. R.149.

Plaintiff describes Dr. Black's deviation from the DOT as "effectively inventing a new position not recognized in the DOT or supported by credible evidence." Doc. 12, p. 11. Thus, Plaintiff argues that the ALJ erred in relying on Dr. Black's testimony about the document preparer job and by finding, based on that testimony, that Plaintiff could perform jobs that existed in substantial numbers in the national economy. I disagree.

1. The ALJ did not Commit Legal Error.

Plaintiff first characterizes her attack on Dr. Black's testimony as a claim that the ALJ committed legal error in relying on it, requiring *de novo* review by this Court. Plaintiff claims that "the Commissioner erred as a matter of law by failing to identify jobs" that meet the step five criteria. Doc. 12, p. 5. To the extent Plaintiff asserts legal error, the Court understands Plaintiff to mean that the ALJ used a flawed procedure to identify the job of document preparer as one for which Plaintiff was eligible.

Under 20 C.F.R. § 416.966, an ALJ must determine whether a claimant, with her experience and limitations, can still perform jobs that exist in

significant numbers in the national economy. This determination may be based on governmental publications, including the DOT, as well as consultation with a vocational expert or other specialist. *See* 20 C.F.R. § 416.966(d)-(e). Pursuant to SSR 00-4p, excerpted above, the ALJ has "an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them." *Washington*, 906 F.3d at 1356.

Here, the ALJ received testimony from a qualified vocational expert that Plaintiff could perform certain jobs, including that of "document preparer," as it exists now, rather than as described in the DOT. R. 148-51. The vocational expert then explained the discrepancies between his testimony and the DOT, noting that he relied on his education and 35 years of experience for any testimony not based on the DOT. R. 151. In her decision, the ALJ considered and resolved the discrepancy. R. 22 ("The undersigned accepts and credits the testimony of the vocational expert with respect to the distinction between the way the document preparer job is described in the DOT versus the way it is currently performed in the national economy. The undersigned further accepts and credits the testimony of the vocational expert and his opinion that, despite those distinctions, a person with the residual functional capacity described in Paragraph Four herein could perform the job of document preparer as that job is currently performed in the national economy."). Thus, the ALJ properly

considered appropriate sources and resolved discrepancies between them as she was required to do.

Plaintiff mistakenly suggests that the ALJ erred by flouting an Emergency Message issued by the Social Security Agency in June of 2024. Doc. 12, pp. 9-10. That message explained that an ALJ could not cite the job of document preparer:

> to support a framework "not disabled" determination or decision without additional evidence from a VS or VE supporting the adjudicator's conclusion that, as the occupation is currently performed:
>
> - Its requirements are consistent with the individual's RFC, and
>
> - It exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant.

Soc. Sec. Admin. EM-24027 REV

(https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM).[3]

---

[3] The Emergency Message which Plaintiff cites was apparently replaced by Emergency Message 2407 (Revised), Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process (https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM), effective as of January 6, 2025. As Plaintiff admits (Doc. 12, p. 10), even the original Emergency Message was issued just after the ALJ decision in this case. Nonetheless, to the extent EM 2407 elaborates and clarifies SSR-004p as applied to the document preparer role, the Court will consider it.

Just as the ALJ properly followed the procedure in SSR 00-4p, the ALJ complied with this Emergency Message. Instead of relying exclusively on the DOT, the ALJ based her finding in part on the vocational expert's testimony that, despite the distinctions between how the DOT describes the document preparer job and how it is currently performed, "a person with the residual functioning capacity [of the Plaintiff] could perform the job of document preparer as that job is currently performed," and that the job "exists in significant numbers in the national economy." R. 22-23. The Court finds no legal error.

### 2.  The ALJ's Finding that Plaintiff Could Work as a Document Preparer was Supported by Substantial Evidence.

Plaintiff also asserts that "the ALJ's finding that Plaintiff can work as a document preparer as that job is currently performed in the national economy is not supported by substantial evidence." *Id.*, p. 7. As to this argument, the Court reviews the ALJ's decision with deference. *See Keeton*, 21 F.3d at 1066.

"Assuming no demand, a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, 587 U.S. at 105. "The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) (unpublished).

16

The crux of Plaintiff's sufficiency argument is that the vocational expert's testimony about document preparers "transform[ed] an obsolete occupation tied to outdated microfilming technology into a vastly simplified and entirely different job of removing paperclips and staples—effectively inventing a new position not recognized in the DOT or supported by credible evidence." Doc. 12, p. 11.

This argument fails. The ALJ was entitled to rely on the vocational expert's testimony as substantial evidence that the document preparer job, as the vocational expert described it, existed in significant numbers in the national economy. The ALJ specifically noted that the "impartial" vocational expert testified about the document preparer job "based on his education[,] training and experience." R. 22. Further, there was "no demand" from Plaintiff for the vocational expert to elaborate on the basis for his testimony about the nature of currently-existing document preparer jobs: Plaintiff's attorney did cross-examine the vocational expert at the hearing, but asked nothing about the document preparer position. *See* R. 152.

The ALJ explicitly adopted the vocational expert's unchallenged testimony that the job of document preparer exists in significant numbers in the national economy, and that someone with Plaintiff's abilities and limitations could perform it. The ALJ's findings as to the document preparer position were supported by substantial evidence.

17

3.  Any Error Would Have Been Harmless.

Finally, the Court notes that, even if the ALJ did err in identifying and describing the document preparer job as one for which Plaintiff was eligible—which she did not—it would not require reversal here. The finding was not material to the ALJ's determination that Plaintiff was not disabled. Remand is unnecessary when an ALJ's error has no effect on the outcome. *Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 837 (11th Cir. 2018) (unpublished); *cf. Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1319 (11th Cir. 2021) (remanding because doing so "would not be an idle and useless formality") (quoting *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)).

"Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer, i.e., the ALJ." Viverette, 13 F.4th 1309 at 1318 (alteration adopted) (quoting *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986)).

Here, the ALJ found that, in addition to the document preparer job, Plaintiff could perform the job of taper, of which there are 3,000 in the national economy, and the job of table worker, of which there are 4,000 in the national economy. R. 22.

Plaintiff asserts that, if the ALJ erred in finding Plaintiff could perform the job of document preparer, this Court must remand the case, because "there

is no finding from the ALJ that the remaining 7,000 jobs constitute a significant number in the national economy." Doc. 12, p. 11. Plaintiff is mistaken. The ALJ specifically found that the jobs of table worker, taper, and document preparer, "*individually* and in combination," exist in the national economy in significant numbers. R. 23 (emphasis added). Leaving no room for doubt, the ALJ further clarified that the significant numbers of jobs potentially available to Plaintiff exist when considering the three jobs "both singly and in combination." R. 23.

Because the ALJ found that the jobs of table worker and taper each exist in significant numbers in the national economy, remand would be futile, regardless of the merit of Plaintiff's objection to the ALJ's finding on document preparer job.

B. The ALJ did not Fail to Develop the Record or to Explain the Basis for her Decision in Determining Plaintiff's Mental Limitations.

Plaintiff argues she is entitled to remand for the separate and independent reason that the ALJ "did not obtain any medical support for her evaluation of the Plaintiff's medical impairments and limitations." Doc. 12, p. 12.

The ALJ found that Plaintiff had a severe impairment of anxiety. R. 14. Then, the ALJ concluded that Plaintiff had mild mental limitations as to understanding, remembering information, and adapting or managing herself,

and the ALJ concluded that the Plaintiff had moderate mental limitations in concentrating and interacting with others. R. 15-16, 21.

In making this finding, the ALJ explained that she found "partially persuasive" the psychiatric evaluations of Dr. Wendy Silver and Dr. Brian McIntyre, (R. 20) both of whom found that Plaintiff had a medically determinable impairment of anxiety that resulted in mild mental limitations and no work limitations. *See* R. 157-58, 166-67. Notably, the ALJ then departed from Dr. Silver and Dr. McIntyre's opinions, "in the direction of a greater degree of restrictions" (R. 21), based on Plaintiff's own testimony about her difficulty with focus and concentration, and based on an independent evaluation by psychologist Dr. Jeremy Zehr (R. 516) documenting Plaintiff's "anxious mood." R. 21. Expressly relying on this record evidence-–-Dr. Silver's report, Dr. McIntyre's report, Dr. Zehr's report, and Plaintiff's own testimony about her social anxiety-–-the ALJ concluded that Plaintiff could perform sedentary work with additional moderate limitations on social interactions and concentration. *Id.*

Plaintiff attributes error to the ALJ's finding, asserting alternately that (1) the record on which it was based was not sufficiently developed, because the ALJ's finding did not echo any medical opinion, and (2) because the ALJ's analysis did not provide a "logical bridge" to connect the ALJ's findings to the

20

evidence in the record. Doc. 12, pp. 13-14. Both of Plaintiff's arguments lack merit.

1. The ALJ did not Fail to Develop the Record.

Plaintiff alleges that the ALJ failed to fairly and fully develop the administrative record regarding Plaintiff's mental impairments and limitations, because the ALJ rejected the medical opinions that discussed Plaintiff's ability to work. Doc. 12, p. 14.

Indeed, "the ALJ has a basic obligation to develop a full and fair record." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "Nevertheless, the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); 20 C.F.R. § 416.912(a) (stating that a claimant "must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) ("Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled"). The Court notes that, here, Plaintiff had counsel to assist her in appropriately developing the record, and thus the ALJ's obligation rose to no "special duty" to develop the record on her behalf. *See Cowart*, 662 F.2d at 735 (11th Cir. 1981) (discussing the special duty when a claimant lacks counsel).

21

"In examining whether the ALJ fully developed the record, [the Court must] look to see if the record contains an[y] evidentiary gaps that resulted in unfairness or clear prejudice." *Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016) (unpublished) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). Plaintiff points to no such evidentiary gaps. Rather, Plaintiff claims that, because the "ALJ properly rejected" the only medical opinions in the record, the state agency psychological consultants' opinions that Plaintiff had *no* mental work limitations, the ALJ lacked medical evidence to support her findings. Doc. 12, p. 14.

In making this argument, Plaintiff mistakenly suggests that an ALJ must agree precisely with one of the medical opinions of record. This is not so. "[T]he 'final responsibility for deciding' the residual functional capacity is 'reserved to the Commissioner,' not an examining physician." *Leslie v. Comm'r, Soc. Sec. Admin.*, No. 22-10676, 2022 WL 4476661, at *4 (11th Cir. Sept. 27, 2022) (per curium) (citing 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1546(c); *Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984) (discussing how an ALJ necessarily must resolve conflicting medical evidence)). And, "the ALJ is free to reject any medical opinion when the evidence supports a contrary conclusion." *Mullen v. Acting Comm'r of Soc. Sec.*, 723 F. App'x 970, 971 (11th Cir. 2018) (unpublished) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

In other words, an ALJ must consider the medical opinions in light of the evidence of record and make her own findings based on the evidence of record. That is what the ALJ did here.

2. The ALJ Sufficiently Explained her Findings.

Nor is the Court persuaded that the ALJ did not sufficiently explain her findings "to allow for meaningful judicial review." Doc. 12, pp. 13-14.

The ALJ has a responsibility "to state with at least some measure of clarity the grounds for [her] decision." *Winschel*, 631 F.3d at 1179 (quotation omitted). Plaintiff argues that "nowhere" in the ALJ's decision did she "explain how she determined Plaintiff's mental work limitations." Doc. 12, p. 13. I disagree.

The ALJ first discusses her findings regarding Plaintiff's mental limitations in her step-three analysis, where the ALJ determined that the limitations did not rise to a per se disability. In that section, the ALJ dedicated multiple pages to discussing each of the four specific limitations she found to exist in relation to Plaintiff's anxiety, two existing to a mild degree and two to a moderate degree. R. 14-16. In separate analyses for each of the four limitations, the ALJ referenced the reviews of the record conducted by Dr. Silver and McIntyre, Dr. Zehr's in-person evaluation of Plaintiff, and the ALJ's own impressions of Plaintiff during the hearing. The ALJ also devoted significant space to Plaintiff's mental limitations and the evidence supporting

23

them in the step four analysis. In that section, the ALJ explained that she found the reports from the non-examining doctors, Dr. Silver and McIntyre, "partially persuasive," and that she gave them that intermediate degree of weight because she was also influenced by Dr. Zehr's evaluation report as well as by Plaintiff's own testimony regarding her mental capacity. R. 20-21.

Not only did the ALJ explain the basis of her mental-limitation findings, she did so in a legally and logically sound way. The ALJ discussed how she considered the medical opinions in the record in conjunction with other evidence more favorable to Plaintiff's disability claim, to arrive at a finding that Plaintiff had greater limitations than the doctors opined. R. 21.

Because the record was appropriately developed, and because the ALJ discussed how she relied on the record in determining her findings relating to Plaintiff's mental limitations, this case is readily distinguishable from Plaintiff's cited authority. Plaintiff points to *Brightmon v. Soc. Sec. Admin., Comm'r* in which an ALJ made an RFC finding without sufficient medical evidence from the relevant period of time, and while "disregard[ing] evidence favorable to the claimant." R. 14.

Here, in contrast, all three medical opinions on which the ALJ relied were written in 2023, during Plaintiff's DIB appeal period. And, to the extent the ALJ "disregarded" them—which, as discussed above, she did not—the portions that the ALJ did not adopt were *unfavorable* to the claimant. *Compare*

*Brightmon v. Soc. Sec. Admin., Comm'r,* 743 F. App'x 347, 354 (11th Cir. 2018) ("Moreover, the ALJ's description of the overall evidence as showing 'minimal' objective findings is difficult to square with imaging scans showing 'moderate to severe' osteoarthritis of the cervical spine and 'significant' degenerative disc disease and bilateral facet arthropathy in the lumbar spine.") *with* R. 21 ("However, the undersigned does not agree with [Dr. Silver and McIntyre's] view that the claimant's anxiety *only* imposes a mild degree of limitation in all four 'B' criteria functional areas.") (emphasis added).

Plaintiff also cites a Southern District of Florida case, *Highfield v. Saul,* where the ALJ found no mental limitations but consulted no medical opinions whatsoever. *See* 2020 WL 5706120, at *10 (S.D. Fla. Sept. 24, 2020) ("Despite the objective medical evidence substantiating the presence of a mental impairment, the record does not contain (1) any medical opinion; (2) mental RFC assessment or; (3) Psychiatric Review Technique ('PRT') assessment relating to the plaintiff's mental impairments."). Here, by contrast, the ALJ carefully considered multiple medical opinions regarding Plaintiff's medical limitations, two of which were PRTs. *See* R. 158, 167. Although the ALJ did not defer entirely to any one medical opinion in reaching her conclusions about Plaintiff's mental limitations, nor did she "craft[] them out of whole cloth," as Plaintiff claims. Doc. 12, p. 14.

The ALJ sufficiently developed the record, considered different medical opinions, discussed their weight, and considered them in light of other record evidence and her own observations of Plaintiff. The ALJ sufficiently explained how she reached her findings, which were supported by substantial evidence.

## IV.    Conclusion

For the reasons stated above:

(1)    The decision of the Commissioner is AFFIRMED.

(2)    The Clerk of Court shall enter judgment in the Defendant's favor, terminate any pending motions, and close the case.

ORDERED on November 24, 2025.

_Natalie Hirt Adams_
NATALIE HIRT ADAMS
United States Magistrate Judge